IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JON UTSA DOE, | § | NO. 5:20-CV-1039-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| ERIC BREY, and UNIVERSITY OF | § | |
| TEXAS AT SAN ANTONIO, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

<u>ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS</u>

The matter before the Court is Defendants University of Texas at San Antonio ("UTSA") and Eric Brey's Motion to Dismiss Plaintiff's Original Complaint.  (Dkt. # 7.)  Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.  Based on the following, the Court **GRANTS WITH LEAVE TO AMEND** Defendants' motion.

<u>FACTUAL BACKGROUND</u>

On September 2, 2020, Plaintiff Jon UTSA Doe ("Plaintiff" or "Jon Doe") filed suit in this Court against Defendants.  (Dkt. # 1.)  Plaintiff's complaint alleges that he is over the age of 40 and a "U.S. Muslim Egyptian immigrant with middle eastern features."  (Dkt. # 1 at 6.)  Plaintiff states that he is an internationally recognized scholar and world expert in the field of Nanotechnology

who moved to work at UTSA in the fall of 2017.  (Id.)  Plaintiff was employed as Associate Professor and Director of the new Chemical Engineering program at UTSA pursuant to a written contract.  (Id.)  Plaintiff alleges that he is a prolific scholar who published over 105 articles and authored 12 papers in prestigious scientific journals during his employment with UTSA.  (Id.)  Plaintiff was supervised by Defendant Eric Brey, the Chair of the Department of Biomedical Engineering.  (Id. at 4, 7.)

According to Plaintiff, during his tenure at UTSA, UTSA used its financial resources to finance the discrimination, harassment, stalking, and retaliation of Plaintiff because of his national origin, gender, age, and religion. (Dkt. # 1 at 7.)  Plaintiff alleges that Defendant Brey "spearheaded" the discrimination.  (Id. at 8.)  Plaintiff asserts that he was not offered equal pay and compensation as other professors who were "American."  (Id.)  Plaintiff further contends that he was denied earning financial research incentives and a summer salary, and that he had a grant taken away from him.  (Id.)  Plaintiff alleges that he was routinely given less prestigious job assignments than younger, female, and non-Egyptian staff, and he was not given the promised assignment of Director of the Chemical and Engineering program.  (Id.)

Plaintiff further states that he: (1) was denied access and ability to conduct research; (2) was blacklisted from obtaining employment elsewhere

because Defendants made negative statements about him to a potential employer; (3) endured religious discrimination because meetings were scheduled when Defendants knew he was at mosque; (4) experienced retaliation after he refused to comply with requests to act in a way that would violate federal regulations for hiring; and (5) was denied a request to move departments based on a hostile work environment.  (Dkt. # 1 at 8–10.)

According to Plaintiff, Defendants "cooked-up conspiracies and lies ('falsehoods') against" him.  (Dkt. # 1 at 10.)  Plaintiff contends that after he complained about the discrimination, he experienced more discrimination and retaliation.  (Id.)  Plaintiff alleges he was prohibited from speaking to students, staff and faculty, and was placed on administrative leave following an investigation.  (Id.)  In 2020, Plaintiff alleges that he was ultimately terminated from employment.[1]  (Id. at 12.)

Upon exhausting his administrative remedies, Plaintiff filed suit in this Court, alleging claims against Defendants pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983.[2]  (Dkt. # 1.)  Plaintiff

---

[1] Defendants, however, dispute that Plaintiff was terminated from employment and state that Plaintiff is still employed at UTSA.  (See Dkt. # 7 at 8 n.2.)

[2] Additionally, Plaintiff alleged a claim pursuant to the Age Discrimination in Employment Act ("ADEA") but withdrew that claim in his response to the motion to dismiss.  (See Dkt. # 11 at 3.)

asserts that he experienced discrimination based on his age, gender, national origin, and religion, and that he was subjected to a hostile work environment, retaliation, and that he was denied procedural and substantive due process as well as equal protection.  (Id.)

On October 2, 2020, Defendants filed a motion to dismiss Plaintiff's claims.  (Dkt. # 7.)  On October 29, 2020, Plaintiff filed a response in opposition. (Dkt. # 11.)  On November 5, 2020, Defendants filed a reply.  (Dkt. # 14.)

APPLICABLE LAW

Defendants have moved to dismiss Plaintiff's claims pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. # 7.)

A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim.  Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the "jurisdictional attack before addressing any attack on the merits."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court must first address

subject matter jurisdiction because, without it, the case can proceed no further.

Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 583 (1999); Ramming, 281 F.3d at

161.

    In considering a Rule 12(b)(1) motion to dismiss for lack of subject

matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the

complaint supplemented by undisputed facts evidenced in the record, or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed

facts." Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th

Cir. 2001) (citation omitted).

    B.    Rule 12(b)(6)

    Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  When

analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all

well pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d

343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d

191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety,

as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions to dismiss, in particular, documents incorporated into the complaint by

reference, and matters of which a Court may take judicial notice." Funk v. Stryker

Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 551 U.S. 308, 322 (2007)).

    To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, a court reviewing a

complaint "[is] not bound to accept as true a legal conclusion couched as a factual

allegation." Id.  "A Rule 12(b)(6) motion to dismiss for failure to state a claim is

an appropriate method for raising a statute of limitations defense." Mann v.

Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).

## ANALYSIS

    Defendants move to dismiss Plaintiff's claims in this case on the basis

that they are either barred by immunity or they fail to raise a valid claim for relief.

    A.    Claims Pursuant to 42 U.S.C. § 1983

    Defendants first move to dismiss Plaintiff's 42 U.S.C. § 1983 claims

against UTSA and Dr. Brey.  (Dkt. # 7 at 8.)  Defendants contend that the Court

lacks subject matter jurisdiction because Plaintiff's § 1983 claims against UTSA

are barred by Eleventh Amendment immunity, and his § 1983 claims against Dr.

6

Brey in his individual capacity are barred by qualified immunity.  (Id.)  Defendants also move to dismiss these claims on the basis that Plaintiff has failed to state a viable claim for relief.  (Id.)  In response to Defendants' motion, Plaintiff concedes that he has not brought any individual capacity claims against Dr. Brey, only those in his official capacity.  (Dkt. # 11 at 17.)  Additionally, Plaintiff states that he does not seek any monetary relief from Defendants for his § 1983 claims, but rather he seeks equitable relief "with regard to the removal and expungement of all negative records as to [Plaintiff] held by Defendant UTSA including but not limited to [Plaintiff's] Termination therefrom."  (Dkt. # 11 at 13; Dkt. # 1 at 17.)

    1.   UTSA

Under Texas law, state universities such as UTSA are considered agencies of the State of Texas that are entitled to sovereign immunity.  See Tex. Gov't Code Ann. § 572.002(10)(B) (West 2017) (defining "a university system or an institution of higher education" as a "state agency"); U.S. ex rel. King v. Univ. of Texas Health Sci. Ctr.–Houston, 544 F. App'x 490, 495 (5th Cir. 2013) (noting that "Texas statutes consider 'a [public] university system or an institution of higher education' to be a 'state agency'") (quoting Tex. Gov't Code Ann. § 572.002(10)(B) (West 2017)).  Accordingly, UTSA is "inarguably a state agency that is entitled to sovereign immunity."  Sissom v. Univ. of Texas High Sch., 927 F.3d 343, 348 (5th Cir. 2019) (internal citations omitted); see also Williams v.

<u>Univ. of Houston Downtown Police Dep't</u>, 2019 WL 2931669, at *2 (S.D. Tex. June 18, 2019) ("Under Texas Law, state universities are agencies of the state and enjoy immunity under the Eleventh Amendment."), <u>report and recommendation adopted</u>, 2019 WL 2913765 (S.D. Tex. July 8, 2019).  UTSA has not consented to suit in this case and Congress has not expressly waived Eleventh Amendment immunity for § 1983 suits.  <u>Lewis v. Univ. of Texas Med. Branch at Galveston</u>, 665 F.3d 625, 630 (5th Cir. 2011).  Accordingly, UTSA is entitled to immunity from Plaintiff's § 1983 claims "regardless of the relief sought."  <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  Defendants' motion to dismiss these claims against UTSA is granted, and the claims are dismissed with prejudice.

      2.    <u>Dr. Brey</u>

      Regarding Plaintiff's equitable claims against Dr. Brey in his official capacity for violations of equal protection, substantive due process, and procedural due process, Defendants move to dismiss on the basis that Plaintiff has failed to state a claim upon which relief may be granted.  (Dkt. # 7 at 10.)  Defendants argue that Plaintiff fails to provide sufficient facts explaining how his due process and equal protection rights were violated by Dr. Brey.  (<u>Id.</u>)

i.   <u>Equal Protection</u>

The Fifth Circuit has analogized § 1983 discrimination claims made against public employees (like Dr. Brey) to similar claims made under Title VII. <u>See Lauderdale v. Tex. Dep't. of Criminal Justice</u>, 512 F.3d 157, 166 (5th Cir. 2007).  The Fifth Circuit, in so doing, stated that invidious discriminatory intent can be shown in the same way under § 1983 as under Title VII—by either direct or circumstantial evidence.  <u>See</u> <u>Lee v. Conecuh Cty. Bd. of Ed.</u>, 634 F.2d 959, 961–62 (5th Cir. 1981); <u>Giles v. City of Dallas</u>, 539 F. App'x 537, 543 (5th Cir. 2013) (per curiam).  However, Title VII and § 1983 are different in at least one important way.  <u>See, e.g.</u>, <u>Sims v. City of Madisonville</u>, 894 F.3d 632, 640–41 (5th Cir. 2018) (per curiam).  Importantly, "[u]nlike Title VII, § 1983 applies to individuals."  <u>Id.</u> at 640.  "And since § 1983 applies to individuals, [the Court] must be keenly aware of what § 1983 requires before plaintiffs can seek relief from individuals—namely individual causation."  <u>Jones v. Hosemann</u>, 812 F. App'x 235, 238 (5th Cir. June 15, 2020).

In a § 1983 claim, the Supreme Court instructs that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  <u>Iqbal</u>, 556 U.S. at 676 (emphasis added); <u>see id.</u> at 683 (holding that defendants cannot be held liable "unless they themselves acted on account of a constitutionally protected characteristic"

(emphasis added)).  Only when those individual actions "proximately cause[]" the plaintiff's injury can that plaintiff seek relief under § 1983.  County of Los Angeles v. Mendez, ––– U.S. ––––, 137 S. Ct. 1539, 1548, 198 L.Ed.2d 52 (2017) (citing Heck v. Humphrey, 512 U.S. 477, 483 (1994)); see also Sims, 894 F.3d at 639 (noting that "individual liability for a government official who violates constitutional rights . . . turns on traditional tort principles of 'but-for' causation").

The Fifth Circuit has noted that "[r]equiring a plaintiff to plead individual causation in § 1983 suits makes sense," Hosemann, 812 F. App'x at 239–40, explaining that, "§ 1983 "create[d] a species of tort liability," Heck, 512 U.S. at 483 (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305 (1986)), "and the Supreme Court routinely looks to "the common law of torts," id., to "determine the elements of, and rules associated with, an action seeking damages for [a constitutional] violation." Manuel v. City of Joliet, ––– U.S. ––––, 137 S. Ct. 911, 920, 197 L.Ed.2d 312 (2017).  "And it goes without saying that a fundamental element of common-law torts is causation."  Hosemann, 812 F. App'x 239 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346 (2013) ("Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim.")).  "It is not enough for a plaintiff to simply allege that something unconstitutional happened to him."

Id. at 239–40. "The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." Id.

"Thus, while the prima facie elements of a Title VII claim may establish an employer's liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of the individual defendant caused the harm." Id. at 40 (citing Sims, 894 F.3d at 641 ("That individual liability turns on traditional tort principles of whether the particular act was a 'causal link' in the termination.")); cf. Iqbal, 556 U.S. at 676 ("[Plaintiffs] must plead and prove that *the defendant[s]* acted with discriminatory purpose." (emphasis added)); Lee, 634 F.2d at 960 ("[Plaintiff] alleges that defendants Conecuh County Board of Education, its members, and the Superintendent of Schools . . . repeatedly fail[ed] to promote him to a principalship because of his race.").

Regarding Plaintiff's complaint in this case, Plaintiff makes various allegations against Defendants including that "UTSA used its financial resources to finance the discrimination, harassment, stalking, and retaliation of [Plaintiff] as a result of [Plaintiff's] national origin, gender, age, and religion." (Dkt. # 1 at 7.) Regarding Dr. Brey, Plaintiff states that he "was the specific individual who spearheaded the discrimination" against him. (Id. at 8.) Plaintiff goes on to list several other actions UTSA allegedly took against him as a result of discriminatory intent. Notably absent from Plaintiff's complaint, however, are particular facts and

actions taken specifically by Dr. Brey that resulted in violation of Plaintiff's constitutional rights.  Plaintiff has thus failed to provide any statements in support of his allegations that Dr. Brey, individually, acted with a discriminatory purpose. Without facts in support, Plaintiff's § 1983 equal protection claim fails to state a viable claim for relief.  Rather than dismissal, however, the Court will allow Plaintiff leave to file an amended complaint to replead this claim with specificity. Should Plaintiff fail to do so, the Court will dismiss without prejudice this claim against Dr. Brey.

ii.   <u>Procedural Due Process</u>

The Fourteenth Amendment prohibits a state from depriving a person "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Procedural due process requires notice and an opportunity to be heard. <u>Matthias v. Bingley</u>, 906 F.2d 1047, 1051–52, <u>modified on other grounds</u>, 915 F.3d 946 (5th Cir. 1990).  To survive a Rule 12(b)(6) motion, a procedural due process claim must plausibly establish that (1) the State interfered with an existing protected liberty or property interest; and (2) the procedures leading up to the deprivation of that interest were constitutionally deficient.  <u>O'Donnell v. Harris Cty.</u>, 892 F.3d 147, 157 (5th Cir. 2018).

An employee has a property interest in his employment for purposes of the Fourteenth Amendment only when he has a legitimate right to continued employment.  McDonald v. City of Corinth, 102 F.3d 152, 155 (5th Cir. 1996) (citing Perry v. Sindermann, 408 U.S. 593, 601–602 (1972)).  Generally, no such right exists unless "the public entity has acted to confer, or alternatively, has created conditions which [imply], the existence of a property interest by abrogating its right to terminate an employee without cause."  Muncy v. City of Dallas, 335 F.3d 394, 398 (5th Cir. 2003).  Under Texas law, employment is presumed to be "at will," or terminable at any time by either party with or without cause.  Fed. Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993).  To overcome this presumption, a plaintiff must demonstrate that his employment status has been altered by statute, contract, or express policies which limit the conditions by which an employee may be terminated.  Muncy, 335 F.3d at 398.

In support of his claim, Plaintiff alleges that he "held an undeniable property interest in being paid as required by federal law and in NOT being discriminated against" on account of Plaintiff's "race, religion, gender, or exercise of [Plaintiff's] First Amendment Rights of expression."  (Dkt. # 11 at 15 (emphasis in original).)  Regarding the first alleged property interest, Plaintiff's complaint fails to allege specific facts in support of his claim that he was not paid according to federal law.  Nor does Plaintiff cite any authority in support of this property

interest.  Plaintiff further fails to provide any authority for his second claimed property interest in not being discriminated against.  Given that Plaintiff's purported property interests fail to allege that he was denied a legitimate right to continued employment, Plaintiff has not stated a viable claim for a procedural due process violation pursuant to § 1983.  <u>See</u> <u>McDonald</u>, 102 F.3d at 155.  Rather than dismissal, the Court will allow Plaintiff an opportunity to replead this claim with specificity.  Should Plaintiff fail to do so, the Court will dismiss the claim without prejudice.

iii. <u>Substantive Due Process</u>

"Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." <u>Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.</u>, 489 F.3d 669, 672 n.3 (5th Cir. 2007) (citation omitted).  Substantive due process bars government actions that are arbitrary, or conscience shocking, in a constitutional sense.  <u>City of Sacramento v. Lewis</u>, 523 U.S. 833, 846–47 (1998).  To succeed on a substantive due process claim in the public employment context, Plaintiff must show: (1) that he had a property interest or right in his employment, and (2) that the employer's termination of that interest was arbitrary or capricious.  <u>See</u> <u>Moulton v. City of Beaumont</u>, 991 F.2d 227, 230 (5th Cir. 1993).  Plaintiff has failed to respond to Defendant's motion to dismiss his substantive due process claim.  In any case, as

14

described above, Plaintiff has failed to adequately plead a basis for a property interest in his employment with UTSA.  Thus, he cannot make out a substantive due process claim.  The substantive due process claim thus also fails to state a claim for relief.  Again, rather than dismissal, the Court will allow Plaintiff an opportunity to replead this claim with specificity.  Should Plaintiff fail to do so, the Court will dismiss the claim without prejudice.

    B.    Title VII

        Defendants move to dismiss Plaintiff's Title VII discrimination, retaliation, and hostile work environment claims on the basis that Plaintiff fails to state any claim upon which relief may be granted.  (Dkt. # 7 at 15.)  Title VII prohibits employment discrimination and retaliation based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Claims under Title VII are analyzed under the framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

        Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed.  Id.  To establish a prima facie claim of discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or that others

15

outside of his protected class and similarly situated were treated more favorably.

<u>See</u> <u>id.</u>  To establish a prima facie claim of retaliation, a plaintiff must demonstrate

that (1) he engaged in protected activity; (2) an adverse employment action

occurred; and (3) that a causal link exists between the protected activity and the

adverse employment action.  <u>See</u> <u>id.</u> at 557.

       The Fifth Circuit has cautioned that a plaintiff is not required to make

a showing of each prong of the prima facie test at the pleading stage.  <u>See</u> <u>Raj v.</u>

<u>Louisiana State Univ.</u>, 714 F.3d 322, 331 (5th Cir. 2013) (citing <u>Swierkiewicz v.</u>

<u>Sorema N.A.</u>, 534 U.S. 506, 510–12 (2002)).  Thus, the question for the Court on

initial screening is simply whether Plaintiff's pleadings sufficiently state that he

suffered a discriminatory employment action or actionable retaliation.  <u>See</u>

<u>Swierkiewicz</u>, 534 U.S. at 512–13.  "While a plaintiff is not required to plead a

prima facie case based on discrimination and retaliation at the pleading stage for

purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable

the court to reasonably infer that his employer or employment agency

discriminated against him in violation of Title VII and took the alleged adverse

employment action because he engaged in protected activity."  <u>Nieman v. Hale</u>,

No. 3:12–cv–2433–L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012) (internal

citation omitted).

Here, Plaintiff's allegations of discrimination are mostly insufficient. Aside from his conclusory claims of animus based on his national origin, gender, age, and religion, Plaintiff alleges almost no facts demonstrating that any Defendants' actions were motivated by any protected characteristics.  (See Dkt. # 1 at 7–13.)   While Plaintiff states that he endured religious discrimination when Defendants held department meetings while he was at mosque, his other allegations are generally devoid of specific objective incidents of discrimination— for example—racial comments or treatment different from similarly situated employees of another race or national origin.  Rather, Plaintiff apparently asks this Court to infer national origin, gender, age, and religion-based discrimination premised only on Defendants' alleged mistreatment of him and subsequent termination.[3]  Such unsupported allegations fail to state a claim—that is, under Rule 8(a), fail to rise to the level of allegations that would enable the Court to reasonably infer that Plaintiff's employer discriminated against him in violation of Title VII.

Similarly, Plaintiff's claims of retaliation are also deficient.  Under Title VII, a person "has engaged in protected activity" if he has "opposed any practice made an unlawful employment practice by this subchapter" or "made a

---

[3] Again, although it is not clear to the Court, Defendants contend that Plaintiff is still employed at UTSA and was never terminated nor replaced.  (See Dkt. # 7 at 8 n.2.)

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427–28 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a)). "[I]f the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex or national origin, he cannot maintain a retaliation claim under Title VII." Wesley v. Scobee Foods, Inc., No. 3:12–cv–1836–K, 2013 WL 3324092, at *6 (N.D. Tex. June 28, 2013). "Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII." Nieman, 2012 WL 3204990, at *3.

Plaintiff's allegations in his complaint regarding retaliation provide a little more factual specificity than his claim for discrimination, but still lack the factual allegations necessary to state a valid claim for relief. For instance, the complaint fails to adequately allege specifics regarding his protected activity, adverse employment action, and the causal relation between the two. For instance, Plaintiff fails to describe with factual specificity the alleged discrimination that prompted his undescribed complaints to UTSA. For these reasons, Plaintiff has failed to set forth sufficient allegations that would enable the Court to reasonably infer that his employer took an adverse employment action because he engaged in protected activity and so has failed to state a claim for

18

retaliation under Title VII.  See Byers, 209 F.3d at 427; Nieman, 2012 WL
3204990, at *4.

Defendants also move to dismiss Plaintiff's Title VII hostile work
environment claim on the basis that Plaintiff has failed to state a valid claim for
relief.  (Dkt. # 7 at 18.)  "A plaintiff may establish a Title VII violation by proving
that [] discrimination [based on a protected category] has created a hostile or
abusive working environment."  Woods v. Delta Beverage Grp., 274 F.3d 295, 298
(5th Cir. 2001) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66
(1986)).  In order to establish a hostile work-environment claim, a plaintiff must
prove five elements: (1) the employee belonged to a protected class; (2) the
employee was subject to unwelcome . . . harassment; (3) the harassment was based
on sex; (4) the harassment affected a "term, condition, or privilege" of
employment; and (5) the employer knew or should have known of the harassment
and failed to take prompt remedial action.  Id. (citing Shepherd v. Comptroller of
Public Accounts of the State of Texas, 168 F.3d 871, 873 (5th Cir. 1999) (footnote
omitted)).

Regarding this claim, Plaintiff's complaint fails to allege specific
factual details to support a hostile work environment.  Instead, Plaintiff alleges
only that "Defendant's retaliatory acts contributed to and aggravated the hostile
workplace environment of Plaintiff Jon's place of employment."  (See Dkt. # 1 at

14.)  The complaint, however, fails to allege any specifics concerning the alleged

retaliatory and/or discriminatory acts he endured, nor does Plaintiff explain the

alleged hostile work environment.  As such, Plaintiff has failed to plead facts that

create a reasonable inference that he was subject to harassment or that his

harassment was based on his protected status.

Again, rather than dismissal, the Court will give Plaintiff the

opportunity to address the deficiencies in his complaint for his Title VII claims.

Should Plaintiff fail to do so, the Court will dismiss these claims without prejudice.

<u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS WITH LEAVE TO**

**AMEND** Defendants' Motion to Dismiss Plaintiff's Original Complaint.  (Dkt.

# 7.)  Plaintiff's § 1983 claims against UTSA are **DISMISSED WITH**

**PREJUDICE**.  Regarding Plaintiff's remaining claims, Plaintiff may file an

amended complaint **within twenty-one (21) days of the date of this Order** to

address the deficiencies in his pleading as discussed in this Order.  Failure to do so

will result in the Court's dismissal of these claims without prejudice.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, January 28, 2021.

_____

David Alan Ezra
Senior United States District Judge

20