IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JON UTSA DOE, | § | NO. 5:20-CV-1039-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| ERIC BREY, JOANN BROWNING, | § | |
| and UNIVERSITY OF TEXAS AT | § | |
| SAN ANTONIO, | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

The matter before the Court is Defendants University of Texas at San
Antonio ("UTSA"), Joann Browning, and Eric Brey's ("Defendants") Motion to
Dismiss Plaintiff's First Amended Complaint.  (Dkt. # 26.)  The Court finds this
matter suitable for disposition without a hearing.  Based on the following, the
Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

FACTUAL BACKGROUND

On September 2, 2020, Plaintiff Jon UTSA Doe ("Plaintiff" or "Jon
Doe") filed suit in this Court against Defendants.  (Dkt. # 1.)  Plaintiff's amended

complaint[1] alleges that he is "a male, U.S. Muslim Egyptian immigrant with middle eastern features." (Dkt. # 21 at 1 n.1.)  Plaintiff states that he is an internationally recognized scholar and world expert in the field of Nanotechnology who moved to work at UTSA in the fall of 2017.  (Id. at 3.)  Plaintiff was employed as Associate Professor in the Department of Biomedical and Chemical Engineering at UTSA.  (Id.)  Plaintiff also held a joint appointment at UTSA in the Department of Chemistry and the Department of Physics and Astronomy.  (Id.)  Plaintiff alleges that he authored twelve papers in prestigious scientific journals during his employment with UTSA.  (Id. at 3–4.)  Plaintiff states that his employment contract required him to report to Defendant Joann Browning, UTSA's Dean of the College of Engineering, but he was demoted and then supervised by Defendant Eric Brey, the Chair of the Department of Biomedical Engineering.  (Id. at 5.)

According to Plaintiff, he experienced inequitable treatment by UTSA and was paid less than comparable white employees.  (Dkt. # 21 at 5.)  He alleges that he was alienated from department governance based on his national origin and religion.  (Id.)  Plaintiff also asserts that he faced hostility and discrimination after disagreeing with the chemical engineering faculty concerning who to hire when

---

[1] Following the Court's ruling on Defendants' initial motion to dismiss which dismissed with prejudice Plaintiff's claim against UTSA pursuant to 42 U.S.C. § 1983, the Court allowed Plaintiff to replead his remaining claims.  (Dkt. # 16.)

Plaintiff served on a search committee for the position.  (Id. at 7.)  Plaintiff contends further that he experienced unwarranted reprimand after he expressed concerns to Brey over a graduate student's misrepresentations in her UTSA application.  (Id. at 8.)  Plaintiff states that after he felt his concerns were being ignored by Brey and Browning, he reported them to UTSA's Equal Opportunity Services ("EOS") Office.  (Id. at 9.)

Thereafter, according to Plaintiff, when he arrived at the EOS Office to discuss his complaint, Plaintiff states his meeting was abruptly cancelled and he was in fact informed that an EOS investigation was taking place against him and he was placed on administrative leave for approximately eight months.  (Dkt. # 21 at 9–10.)  Plaintiff's investigation was based on complaints by several students in his department.  (Dkt. # 26 at 6–7.)  According to Plaintiff, he was ultimately subject to four EOS investigations, which all concluded that he had not violated any UTSA policies.  (Dkt. # 21 at 15–16.)  He contends that after he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against based on his national origin and religion, he suffered retaliation by Brey and Browning.  (Id. at 17.)  Plaintiff states that he received a negative faculty review which ultimately resulted in the non-renewal of his employment contract effective May 31, 2021.  (Id. at 16.)  Plaintiff alleges that Brey and Browning spread false information about him to the graduate students in

3

his department and maligned him from prospective employers.  (Id. at 19.)

Plaintiff further alleges that UTSA has a pattern and practice of discrimination,

including replacing non-white employees in university leadership with white

employees.  (Id. at 20.)

 Upon exhausting his administrative remedies, Plaintiff filed suit in

this Court.  (Dkt. # 1.)  On March 17, 2021, Plaintiff filed an amended complaint

alleging claims against Defendants pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII") for retaliation and discrimination based on his national origin

and religion, as well as equal protection and free speech claims against Browning

and Brey only pursuant to 42 U.S.C. § 1983.  (Dkt. # 21.)

 On May 24, 2021, Defendants filed a motion to dismiss Plaintiff's

amended claims.  (Dkt. # 26.)  On June 7, 2021, Plaintiff filed a response in

opposition.  (Dkt. # 27.)  On June 14, 2021, Defendants filed a reply.  (Dkt. # 28.)

APPLICABLE LAW

 Defendants have moved to dismiss Plaintiff's claims pursuant to both

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. # 26.)

A. Rule 12(b)(1)

 A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil

Procedure challenges a federal court's subject matter jurisdiction.  See Fed. R. Civ.

P. 12(b)(1).  Under Rule 12(b)(1), a claim is properly dismissed for lack of subject

4

matter jurisdiction when a court lacks statutory or constitutional authority to adjudicate the claim.  Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).  When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the "jurisdictional attack before addressing any attack on the merits."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court must first address subject matter jurisdiction because, without it, the case can proceed no further. Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 583 (1999); Ramming, 281 F.3d at 161.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).

B.    Rule 12(b)(6)

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a Court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, a court reviewing a complaint "[is] not bound to accept as true a legal conclusion couched as a factual allegation." Id.  "A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).

ANALYSIS

Defendants move to dismiss Plaintiff's claims in this case on the basis that they suffer from various jurisdictional defects or they fail to raise valid claims for relief.  (Dkt. # 26.)

A.    Title VII Claims

Defendants move to dismiss Plaintiff's Title VII discrimination and retaliation claims on the basis that Plaintiff fails to state any claim upon which relief may be granted.  (Dkt. # 26 at 13.)  Title VII prohibits employment discrimination and retaliation based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Claims under Title VII are analyzed under the framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed.  Id.  To establish a prima facie claim of discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or that others outside of his protected class and similarly situated were treated more favorably. See id.  To establish a prima facie claim of retaliation, a plaintiff must demonstrate

that (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action.  See id. at 557.

The Fifth Circuit has cautioned that a plaintiff is not required to make a showing of each prong of the prima facie test at the pleading stage.  See Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002)).  Thus, the question for the Court on initial screening is simply whether Plaintiff's pleadings sufficiently state that he suffered a discriminatory employment action or actionable retaliation.  See Swierkiewicz, 534 U.S. at 512–13.  "While a plaintiff is not required to plead a prima facie case based on discrimination and retaliation at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that his employer or employment agency discriminated against him in violation of Title VII and took the alleged adverse employment action because he engaged in protected activity."  Nieman v. Hale, No. 3:12–cv–2433–L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012) (internal citation omitted).

      1.    <u>Claims against Brey and Browning in Their Individual Capacity</u>

Defendants move to dismiss the claims against Brey and Browning in their individual capacity on the basis that there is no individual liability under Title VII.  (Dkt. # 26 at 13.)  Indeed, "[b]ecause Title VII liability extends only to 'employers,' any recovery against supervisors, such as [Brey and Browning], must be against them in their official capacities, not individually." <u>Caro v. City of Dallas</u>, 17 F. Supp. 2d 618, 624 (N.D. Tex. 1998) (citing <u>Huckabay v. Moore</u>, 142 F.3d 233, 241 (5th Cir. 1998) (overruled on other grounds); <u>Grant v. Lone Star Company</u>, 21 F.3d 649, 651 (5th Cir.), <u>cert. denied</u>, 513 U.S. 1015 (1994); <u>Harvey v. Blake</u>, 913 F.2d 226, 227–28 (5th Cir. 1990).  Accordingly, Plaintiff's Title VII claims against Brey and Browning in their individual capacities[2] are dismissed with prejudice.

      2.    <u>Discrimination</u>

Defendants move to dismiss Plaintiff's Title VII discrimination claims on the basis that Plaintiff has not alleged facts that create a reasonable inference that he was treated differently because of his national origin or religion.  (Dkt. # 26 at 14.)  Defendants argue that Plaintiff's amended complaint fails to identify anyone who is similarly situated to himself but was treated differently based on

---

[2] Plaintiff has only sued Brey and Browning in their individual capacities and not in any official capacities for each of his claims.  (<u>See</u> Dkt. # 21.)

protected characteristics.  (Id. at 14–15.)  For instance, Defendants contend that Plaintiff does not state who these people are, whether they had a similar disciplinary history as Plaintiff, and whether they had similar job responsibilities. (Id. at 15.)

Plaintiff's amended complaint alleges that: (1) "he was compensated less than his non-Muslim, non-Egyptian peers in his Department"; (2) "[t]he start-up funding provided to [him] in connection with his UTSA employment contract is substantially less than the funds received by his similarly situated, non-Muslim, non-Egyptian colleagues"; (3) "[t]hose similarly situated, non-Muslim, non-Egyptian colleagues had discretion to use the funds awarded to them while [Plaintiff's] funds were subject to the discretion and control of a non-Muslim, non-Egyptian supervisor"; (4) he was demoted and his job responsibilities were reassigned "to a non-Muslim, non-Egyptian faculty member both before and after [he] was placed on administrative leave"; and (5) "other non-Muslim, non-Egyptian faculty members under investigation by UTSA's EOS office, including [Plaintiff's] supervisors, were never placed on administrative leave or prohibited from communicating with UTSA employees, students, or outside funding organizations."  (Dkt. # 21 at 26.)

Upon review, the Court finds these allegations sufficient to state a claim for relief.  The Fifth Circuit requires a plaintiff to allege facts, "direct or

circumstantial, that would suggest [the defendant's] actions were based on [the plaintiff's membership in a protected class] or that [the defendant] treated similarly situated employees of other races or national origin more favorably." <u>Chhim v. Univ. of Tex. at Austin</u>, 836 F.3d 467, 471 (5th Cir. 2016).  Although UTSA complains that Plaintiff has failed to specifically identify a comparator, it has not cited any Supreme Court or Fifth Circuit precedent requiring a plaintiff to identify a comparator by name at the *pleading* stage.[3]  In fact, courts in this Circuit have found the opposite, even at the summary judgment stage.  <u>See</u> <u>Dunn v. Apache Indus. Servs.</u>, No. CV 17-12777, 2020 WL 4674424, at *4 (E.D. La. Aug. 12, 2020) (rejecting defendant's argument that plaintiff failed to adequately identify comparator where plaintiff alleged that she was a painter who was paid less than "other male co-workers (who were also painters)").  Thus, although not perfect, Plaintiff's allegations at this stage of the proceeding are sufficient to state a Title VII discrimination claim that is plausible on its face, and Defendant's motion to dismiss as to this claim will be denied.[4]

---

[3] Instead, Defendants cite to a case decided at the summary judgment stage, <u>Outley v. Luke & Assocs.</u>, 840 F. 3d 212 (5th Cir. 2016).  (<u>See</u> Dkt. # 26 at 15.)

[4] In moving to dismiss Plaintiff's claims, Defendants encourage the Court to review the EOS report attached to their motion.  (<u>See</u> Dkt. # 26-1.)  Although Plaintiff references the report in his amended complaint, the Court finds Defendants' arguments concerning the EOS report go to the actual merits of Plaintiffs' claims, and therefore the Court will not review the report at this time in deciding only whether Plaintiff has sufficiently pled his claims.

3.    <u>Retaliation</u>

Defendants also argue that Plaintiff's retaliation claim must be dismissed because he has failed to allege any facts to support his claim that he was retaliated against after complaining about Brey's conduct.  (Dkt. # 26 at 15.) Defendants contend that the conduct Plaintiff complained of had nothing to with his status as a Muslim Egyptian and therefore cannot support a retaliation claim. (<u>Id.</u>)

Under Title VII, a person "has engaged in protected activity" if he has "opposed any practice made an unlawful employment practice by this subchapter" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  <u>Byers v. Dallas Morning News, Inc.</u>, 209 F.3d 419, 427–28 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a)).  "[I]f the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex or national origin, he cannot maintain a retaliation claim under Title VII."  <u>Wesley v. Scobee Foods, Inc.</u>, No. 3:12–cv–1836–K, 2013 WL 3324092, at *6 (N.D. Tex. June 28, 2013).  "Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII."  <u>Nieman</u>, 2012 WL 3204990, at *3.

Plaintiff's complaint states that: (1) he "felt that the reason his concerns [were] ignored was based on his national origin and/or religion" and so he "reported the discrimination and harassment he was experiencing to UTSA's [EOS] on September 13, 2019"; (2) he was thereafter placed on administrative leave and prohibited from communicating with UTSA students, staff, or personnel; (3) he "met with someone in the EOS office to discuss his complaint against Drs. Brey and Browning on September 18, 2019," informing "the EOS employee about the discriminatory treatment he experienced while working under Drs. Brey and Browning as he had previously articulated in his formal complaint to EOS"; (4) while he was placed on leave, Brey and Browning worked to alienate Plaintiff's students from him; (5) "[d]espite receiving an excellent evaluation from the technical committee in Doe's Department (which included four tenured faculty members) on March 22, 2020, Dr. Brey rejected that committee's professional judgment and evaluation" of him, and on April 1, 2020, "Dr. Brey provided Doe with a poor evaluation and recommended that Doe not be awarded tenure by UTSA and instead elected not to renew Doe's employment contract"; and (6) to Plaintiff's knowledge, "no other non-Egyptian, non-Muslim faculty members were targeted in a similar fashion by Drs. Browning and Brey." (Dkt. # 21 at 9–13.)

Based on these allegations, the Court finds that Plaintiff has alleged a Title VII retaliation claim that is plausible on its face. The Court again highlights

13

that, at the 12(b)(6) stage, Plaintiff is not required to plead a prima facie case, but rather must simply plead a plausible claim.  See E.E.O.C. v. Bass Pro Outdoor World, L.L.C., No. 4:11–CV–3425, 2013 WL 1124063, at *5 (S.D. Tex. Mar. 18, 2013) (emphasis added).  The Court finds Plaintiff has done so in his amended complaint and this claim will not be dismissed.

      **B.**    <u>Claims Pursuant to 42 U.S.C. § 1983</u>

        Defendants also move to dismiss Plaintiff's 42 U.S.C. § 1983 claims against Defendants.  (Dkt. # 26 at 17.)  Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff's § 1983 claims against UTSA are barred by Eleventh Amendment immunity,[5] and his § 1983 claims against Brey or Browning in their individual capacity are barred by qualified immunity.  (Id.)  Defendants assert that Brey and Browning acting in their individual capacity are entitled to qualified immunity because their actions were discretionary, and their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  (Id.)  Defendants also move to dismiss these claims on the basis that Plaintiff has failed to state a viable claim for relief.  (Id.)

---

[5] The Court notes that it has already dismissed with prejudice Plaintiff's § 1983 claims against UTSA and therefore does not address it again here.  (See Dkt. # 16.)

In response to Defendants' motion, Plaintiff states that Eleventh Amendment immunity does not bar his § 1983 claims against Brey and Browning because he seeks prospective, equitable relief against these individual defendants. (Dkt. # 27 at 12.)  He states that he seeks reinstatement of his employment which he argues brings his claims within the Ex Parte Young exception to Eleventh Amendment immunity.  (Id.)  Plaintiff also contends that he plausibly alleges these claims against Brey and Browning.  (Id.)

       1.    Reinstatement

Importantly, the Court only retains jurisdiction over Plaintiff's claims properly characterized as prospective relief, including any § 1983 claims against Brey and Browning brought in their *official* capacity for reinstatement.  Nelson v. Univ. of Tex. at Dallas, 535 F.3d 318, 324 (5th Cir. 2008) ("[A] request for reinstatement is sufficient to bring a case within the Ex parte Young exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law."); see also Anderson v. Valdez, 913 F.3d 472, 479 (5th Cir. 2019).  "To meet the Ex parte Young exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their *official* capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." Aguilar v. Tex. Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

Plaintiff has not sued Brey or Browning in their official capacities, only their individual capacities.  (See Dkt. # 21 at 1.)  Thus, as individuals, Brey and Browning are powerless to reinstate Plaintiff, and Plaintiff has not alleged what power these individual defendants would have to reinstate him in their individual capacities.  It is only in their official capacities as employees of UTSA that they possibly could affect such relief.  For this reason, Plaintiff's § 1983 claims seeking reinstatement against Brey and Browning in their individual capacities must be dismissed with prejudice.

    2. <u>Monetary Relief</u>

Although not clear in his response to Defendants' motion to dismiss, Plaintiff's amended complaint also "seeks all monetary . . . remedies available to him" regarding his § 1983 claims.  (Dkt. # 21 at 30.)  Brey and Browning contend that they are entitled to qualified immunity in their individual capacity as to these claims.  (Dkt. # 26 at 17.)  Notably, Plaintiff fails to address this argument in his response to the motion.  (See Dkt. # 27.)

Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 623 (5th Cir. 2003).  Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances.  Romero v. City of Grapevine, 888 F.3d 170, 176 (5th Cir. 2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity.  Cole v. Carson, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), as revised (Aug. 21, 2019).  A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct.  Reed v. Taylor, 923 F.3d 411, 414 (5th Cir. 2019).  The Supreme Court held in Pearson that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  555 U.S. at 236.  Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis.  Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008).  If a plaintiff fails to establish either prong, the public

official is immune from suit.  Zarnow v. City of Wichita Falls, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity.  Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985).  To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained."  Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 954 F.2d 1054, 1055 (5th Cir. 1992).  Mere conclusory allegations are insufficient to meet this heightened pleading requirement.  Elliott, 751 F.2d at 1479.

### i.    Equal Protection Discrimination

Plaintiff asserts in his amended complaint that Brey and Browning deprived him of equal protection under the Fourteenth Amendment by singling him out and "forcing him to undergo multiple investigations for baseless complaints because Plaintiff is a Muslim, Egyptian male."  (Dkt. # 21 at 29.)  "The Equal Protection Clause directs that persons similarly situated should be treated alike."  Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted).  More specifically, to state a claim of discrimination under the Equal Protection Clause

and § 1983, a plaintiff must plausibly allege two things.  First, he must allege that

he was treated differently than persons similarly situated to him; second, he must

allege that such treatment stemmed from discriminatory intent.  <u>Anokwuru v. City</u>

<u>of Houston</u>, 990 F.3d 956, 965 (5th Cir. 2021) (citing <u>Fennell v. Marion Indep.</u>

<u>Sch. Dist.</u>, 804 F.3d 398, 412 (5th Cir. 2015)).  "To establish discriminatory intent,

a plaintiff must show that the decision maker singled out a particular group for

disparate treatment and selected his course of action at least in part for the *purpose*

of causing its adverse effect on an identifiable group."  <u>Id.</u> (emphasis in original).

Plaintiff's amended complaint alleges that: (1) his demotion occurred

shortly after Browning learned that Doe was Muslim and he suspected the reason

for his demotion was religious discrimination; (2) he did not have control over

start-up funds like non-Muslim, non-Egyptian faculty had and he had to seek

approval from Brey to use the funds; (3) he believed Browning "was

discriminating against him on the basis of his religion and/or national origin

because Browning previously singled out two Muslim members of the Civil

Engineering faculty by taking their grant funds and reallocating said funds to a

white, non-Muslim member of the faculty"; (4) "Brey once joked to staff that he

'knew how to control out-of-control Mediterranean people'"; (5) the

"circumstances surrounding Brey's comments led Plaintiff to believe Dr. Brey was

biased against Egyptians or others Brey considered to be 'out-of-control

Mediterranean people'"; (6) after Plaintiff informed Brey that he was unable to attend faculty meeting because they interfered with his religious worship, Brey insisted Plaintiff forgo his religious services in favor of attending the faculty meetings; (7) Browning refused to investigate Plaintiff's concerns after he complained that he was being discriminated against; and (8) Browning threatened to terminate Plaintiff's employment after he requested a transfer to the College of Science.  (Dkt. # 21 at 5–7.)

       Despite these allegations, Plaintiff fails to sufficiently allege that he was treated differently than a person who is similarly situated for his §1983 equal protection claim.[6]  See Anokwuru, 990 F.3d at 965.  He likewise fails to allege that his treatment originated from discriminatory intent.  See id.; cf. Crain v. City of Selma, 952 F.3d 634, 642 (5th Cir. 2020) (finding the same in the summary judgment context) ("Discriminatory purpose implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the *purpose* of causing its adverse effect on an identifiable group." (emphasis in original)).  Accordingly, Plaintiff's allegations are insufficient to state a claim for an equal protection violation.  Thus, given that the Court has already allowed Plaintiff an opportunity to amend his complaint,

_____

[6] Compare Plaintiff's allegations regarding similarly situated individuals as pled in his Title VII discrimination claim as addressed above.  (See Dkt. # 21 at 26.)

Plaintiff's equal protection claim alleged pursuant to the Fourteenth Amendment is dismissed with prejudice.[7]  The Court concludes that Plaintiff has alleged his best case.  See Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999).

ii.    Free Speech

Along with his § 1983 equal protection discrimination claim, Plaintiff also alleges that Brey and Browning retaliated against him for exercising his free speech rights under the First Amendment.  (Dkt. # 21 at 29.)  In order to establish that his First Amendment right to free speech has been violated by Brey and Browning's alleged retaliatory conduct, Plaintiff must show (1) that his speech was constitutionally protected, i.e., that it involved a matter of public concern; (2) that his interest in commenting on the matters of public concern outweighs the public employer's interest in promoting efficiency; and (3) that his speech was a motivating or substantial factor behind the defendants' actions.  Cabrol v. Town of Youngsville, 106 F.3d 101, 108 (5th Cir. 1997).  Because Brey and Browning have asserted a qualified immunity defense, the relevant inquiry in considering their motion to dismiss is whether either of these defendants violated a clearly

---

[7] To the extent Plaintiff brings an equal protection claim as a class-of-one claim, which allows a plaintiff to bring an equal protection claim if he alleges "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), it fails for the same reason—he has not pled that he was treated differently than any other similarly-situated employee nor has he pled any other requirements for such a claim.

established First Amendment right of Plaintiff when his employment contract was not renewed.

Plaintiff alleges that after he "freely spoke, in filing EOS complaints as well as a grievance alleging discrimination on the basis of religion and national origin, Defendants retaliated against Plaintiff by subjecting him to baseless investigations and ultimately conducting an unfair and biased third-year evaluation that led to non-renewal of Plaintiff's employment contract and the concomitant denial of tenure."  (Dkt. # 21.)

Often, complaints made by a public employee "up the chain of command about conditions in a workplace" are found to be unprotected speech under the First Amendment because those complaints are considered to be undertaken in the course of performing a job.  Johnson v. Halstead, 911 F.3d 267, 279 (5th Cir. 2018), rh'g en banc denied, No. 17-10223, 2019 WL 625144 (5th Cir. Feb. 14, 2019) (holding that a police chief was entitled to qualified immunity on a sergeant's First Amendment retaliation claim because, among other reasons, the alleged harassment suffered by the sergeant arose from internal complaints about racial discrimination).  At a minimum, in the Fifth Circuit, it is "not clearly established that an internal complaint . . . made only to supervisors, primarily to vindicate one's own rights," qualifies as protected speech.  Id.

Nonetheless, a public employee is afforded constitutional protections if he "sp[eaks] as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  For example, "[i]f a public employee takes [his] job concerns to persons outside the work place in addition to raising them up the chain of command at [his] workplace, then those external communications are ordinarily not made as an employee, but as a citizen." Gibson v. Kilpatrick, 838 F.3d 476, 482 (5th Cir. 2016).  However, if a public employee first makes internal comments in his capacity as employee and then follows those comments with similar external statements that "approximate citizen speech," he "cannot escape the discipline of [his] employer for breach of [his] employee duties by going public with the same speech" because the external public statements are a "continuation" of the statements made earlier as an employee.  Anderson v. Valdez, 913 F.3d 472, 478 & n.24 (5th Cir. 2019).

Here, Plaintiff alleges that he filed an internal EOS complaint—up the chain of command—concerning alleged national origin and religious discrimination he experienced by Brey and Browning.  (Dkt. # 21 at 29–31.) Because it is not clearly established law that an internal complaint made only to supervisors qualifies as protected speech under the First Amendment, Brey and Browning are entitled to qualified immunity concerning Plaintiff's internal complaints up the chain of command.  See Johnson, 911 F.3d at 279.  Accordingly,

the Court grants the motion to dismiss Plaintiff's First Amendment retaliation claim asserted under 42 U.S.C. § 1983 against Brey and Browning in their individual capacity.

<u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. # 26.)  The motion is **GRANTED** as to Plaintiff's: (1) Title VII claim against Brey and Browning; and (2) § 1983 claims.  These claims are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to Plaintiff's Title VII claims for discrimination and retaliation against UTSA.  These are the only remaining claims in this case.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, September 27, 2021.

_____
David Alan Ezra
Senior United States District Judge

24